UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COVON MARTIN, a child under the age of 18 years by his mother and guardian Kim Martin; and KIM MARTIN mother and guardian of Covon Martin;

                                      Plaintiffs,

      -v-                                   1:02-CV-1281

RICHARD W. MOSCOWITZ, M.D.,

                                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -



APPEARANCES:                                OF COUNSEL:

BRADLEY A. SACKS, ESQ.
Attorney for Plaintiffs
20 Vesey Street, Suite 200
New York, NY 10007

MEISELMAN, DENLEA, PACKMAN, CARTON    RICHARD J. NEALON, ESQ.
   & EBERZ P.C.
Attorneys for Defendant
1311 Mamaroneck Avenue
White Plains, NY 10605

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

      This medical malpractice action was brought pursuant to 28 U.S.C. § 1332 on behalf of the minor plaintiff Covon Martin ("Covon") by his mother plaintiff Kim Martin ("Mrs. Martin"). A jury trial was held November 29, 2004, through December 3, 2004, in Utica, New

York. The jury rendered a verdict in favor of defendant Richard W. Moscowitz, M.D. ("Moscowitz") and judgment was entered accordingly. More specifically, the jury found that Moscowitz was not negligent in the care and treatment of Covon's left hip. It also found that there was a lack of informed consent with regard to the left hip, but that consent would still have been given if the appropriate information had been disclosed. The jury found that Moscowitz was not negligent in the care and treatment of Covon's right hip. It then found that although there was a lack of informed consent with regard to the right hip surgery and given appropriate information consent would have been denied, the lack of informed consent was not a substantial factor in causing injuries to Covon.

Plaintiff now renews his motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 and moves to set aside the verdict pursuant to Fed. R. Civ. P. 59 with regard to the jury's finding that the operation on Covon's right hip was not a substantial factor in causing unnecessary injuries to him. Defendant opposes. The motion was taken on submission without oral argument.

## II. FACTS

Covon suffered from slipped capital femoral epiphysis ("SCFE"). Moscowitz first diagnosed SCFE in Covon's left hip, on February 1, 1999, when Covon was thirteen years old. SCFE occurs when the growth plate in the hip (which has not yet solidified) causes the femoral head to slip, causing joint pain. Treatment for this condition consists of surgically placing one or more pins or screws in the hip to prevent additional slippage. Positioning of the pins or screws must be carefully monitored to prevent, or in the case of pin/screw migration to correct, any penetration of the pin/screw beyond the femoral head and into the hip joint. Such penetration causes cartilage damage and can lead to chondrolysis

(destruction of the smooth joint surface) and permanent joint malfunction, as well as other adverse effects.

Two types of hardware are available to fixate the hip in a patient suffering from SCFE. Knowles pins have a pointed end, are solid, and are placed directly without predrilling of the bone. Multiple Knowles pins are required to accomplish a fixation. Fluoroscopic x-rays are used during surgery to direct pin placement and to assure that the Knowles pins are properly placed. That is, x-rays must be reviewed to determine whether the pointed end of any Knowles pins penetrate past the femoral head into the cartilage of the hip joint. Because the x-rays are not three dimensional, it is somewhat difficult to determine whether pin penetration has occurred. Further, post-surgical monitoring of joint range-of-motion and pain is necessary because of the possibility that a Knowles pin penetrated into the joint cartilage, undetected during surgery, or migrated into the joint cartilage post-surgery. Knowles pins were the hardware of choice for SCFE fixation until the middle 1980s, when the cannulated screw was developed.

The cannulated screw is hollow with a blunt end. Placement of a cannulated screw requires a pre-drilled channel. Because the flat-tipped, broader cannulated screw holds more firmly, only one or two cannulated pins are required to accomplish fixation. Again, fluoroscopic x-rays are used during surgery to facilitate proper pin placement. The flat tip design and more central placement of the cannulated screw in the femoral head permits a greater margin of safety between the end of the screw and the cartilage, resulting in much less possibility of penetration than with the Knowles pin. The wider end also makes penetration of the femoral head more difficult. Additionally, the hollow core of the cannulated screw permits the introduction of dye after placement to assure that no penetration has

occurred. If penetration is noted, it can be corrected immediately while the patient is still in surgery. Moreover, because the cannulated screw holds more firmly it is less likely to migrate with the passage of time.

Moscowitz performed surgery on Covon's left hip on February 17, 1999. Moscowitz used three Knowles pins to fixate Covon's left hip. After the surgery fluorographic x-rays were taken. Moscowitz interpreted the x-rays and determined that there was no pin penetration. Four days later a radiologist reviewed the x-rays and opined that two pins were penetrating.

At the time of the surgery Moscowitz informed Covon and Mrs. Martin that he should expect mild discomfort for three weeks postoperatively. However, Covon complained of continued pain, and, on May 28, 1999, Moscowitz performed a second operation on Covon's left hip. During this second surgery, Moscowitz removed one pin that was penetrating and backed off three turns on a second pin.

Thereafter Covon developed pain and limited range-of-motion in his right hip. Moscowitz again diagnosed SCFE. He performed a surgical procedure on August 18, 1999, to stabilize the right femoral head. He used four Knowles pins in the right hip. Covon again complained of pain and limited range of motion beyond the three-week recuperative period Moscowitz predicted. Finally, on September 30, 1999, Moscowitz referred Covon for a second opinion.

Thereafter, Covon consulted Dr. James Schneider ("Schneider"). Schneider determined that two of the four Knowles pins were penetrating. On November 4, 1999, he surgically removed the offending pins from Covon's right hip. Schneider also has diagnosed Covon with chondrolysis, synovitis, and degenerative arthritis. Covon's condition will worsen

over time, and he will need, at the least, a total hip replacement of the right hip. He has been advised to delay having the hip replaced for as long as possible, because a hip replacement will last only ten to fifteen years and therefore would have to be repeated in his lifetime.

## III. STANDARDS

### A. Rule 50--Judgment as a Matter of Law

In considering a motion for judgment as a matter of law, the evidence must be considered in the light most favorable to the non-movant, and all inferences must also be drawn in the non-movant's favor. Nimely v. City of New York, 414 F.3d 381, __, 2005 WL 1620481, at * 6, (2d. Cir. 2005). Conflicting evidence cannot be weighed and the witnesses' credibility cannot be judged. Id. The judgment of the jury cannot be supplanted. Id. The motion may be granted only where there was "no legally sufficient evidentiary basis for a reasonable jury to find" in the non-movant's favor. Fed. R. Civ. P. 50(a); Nimely, 414 F.3d at __, 2005 WL 1620481, at *6. That is, the motion may not properly granted unless "there is 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against [the moving party].'" LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 429 (2d Cir. 1995) (alteration in original) (quoting Song v. Ives Labs., Inc., 957 F.2d 1041, 1046 (2d Cir. 1992)).

### B. Rule 59--Motion for a New Trial

On a motion for a new trial, "the trial judge is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner." Bevevino v. Saydjari, 574 F.2d 676, 684 (2d Cir. 1978). Independent judgment may be exercised despite the

existence of evidence which supports the jury's verdict. Nimely, 414 F.3d at __, 2005 WL 1620481, at *8. However, the mere fact that the trial judge may not agree with the jury's verdict is no reason alone to grant a new trial. Mallis v. Bankers Trust Co., 717 F.2d 683, 691 (2d Cir. 1983). Grant of a new trial is warranted only where the court "'is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" Sorlucco v. New York City Police Dep't, 971 F.2d 864, 875 (2d Cir. 1992) (quoting Smith v. Lightning Bolt Produc., Inc., 861 F.2d 363, 370 (2d Cir. 1988)).

### C. Substantive Law--Lack of Informed Consent

A prima facie case based upon lack of informed consent may be established by proof that the defendant failed to inform the plaintiff of the risks involved and that a reasonably prudent person in plaintiff's position would not have had the surgery if she had been informed of the risks (accompanied by expert testimony as to the risks a reasonable medical practitioner under similar circumstances would have disclosed). Alberti v. St. John's Episcopal Hosp.-Smithtown, 116 A.D. 2d, 612, 612 (N.Y. Sup. Ct. App. Div. 2d Dep't 1986) (citing N.Y. Pub. Health L. § 2805-d). Additionally, evidence must establish that "a reasonably prudent person in the patient's position would not have undergone the [surgery] if he had been fully informed." N.Y. Pub. Health L. § 2805-d(3) (McKinney's 2002). Finally, the lack of informed consent must be a proximate cause of plaintiff's injury. Id.

### IV. DISCUSSION

Plaintiff seeks to set aside the verdict on the informed consent issue with regard to Covon's right hip to the extent that the jury found that the operation of August 18, 1999, was not a substantial factor in causing unnecessary injury. The jury preliminarily found that Moscowitz failed to provide appropriate information to Mrs. Martin prior to obtaining her

consent for the August 18, 1999, surgery. The jury further found that had she been given the appropriate information, a reasonably prudent person in Mrs. Martin's position would not have consented to the surgery. However, the jury then determined that the operation of August 18, 1999, was not a substantial factor in causing Covon unnecessary injury. Thus, the jury verdict in favor of defendant was based solely upon proximate causation.

The essence of plaintiff's informed consent case at trial was that Moscowitz should have explained to Mrs. Martin that a newer technique utilizing the cannulated screw, from which there were significantly less adverse side effects, was available to fixate SCFE. The jury's response to the first question on this issue, that Moscowitz failed to obtain informed consent from Mrs. Martin, demonstrates that it found that she should have been informed about the availability of the cannulated screw, and the higher risk of adverse side effects with the Knowles pin. The answer to the next question, that Mrs. Martin would not have consented to the surgery with the Knowles pins had she known about the availability of the cannulated screw technique, necessarily must have led to either of two subsequent circumstances: (1) Mrs. Martin would not have permitted any surgery at all to be performed, or (2) Mrs. Martin would have consented to surgery using the cannulated screw technique. Comparison between the two potential subsequent occurrences and the actual occurrence (of Covon's surgery using Knowles pins) will show whether Covon suffered any unnecessary injury.

First, if Mrs. Martin would not have permitted any surgery at all, then Covon necessarily would have suffered unnecessary injury--the August 18, 1999, hospitalization; surgery; and recuperation. Were this the case, then no reasonable jury could reach the conclusion that there was no unnecessary injury, and plaintiff would be entitled judgment as

a matter of law. See Fed. R. Civ. P. 50. However, the alternative upon which the jury could have based its finding of no proximate cause must be considered.

The second potential scenario presents a more difficult question. The evidence adduced at trial on this issue follows. Campbell's Operative Orthopedics (hereinafter "Campbell's"), a medical textbook Moscowitz consulted prior to Covon's first surgery, related a study showing that up to fifty-one percent of the time chondrolysis developed after pin penetration. (Moscowitz Nov. 29, 2004, Trial Tr. at 69-70.) Campbell's stated that the recommended treatment of choice was fixation with a single cannulated screw. Id. at 70. Campbell's also related other studies conducted at multiple pediatric orthopedic centers throughout the United States showing zero occurrence of chondrolysis with the use of a single cannulated screw to fixate SCFE. Id. at 71. In fact, the cannulated screw was developed in the early 1980s to reduce the incidence of unrecognized pin penetration at the time of surgery. Id. at 72. However, another study set forth in Campbell's reported that three of the ninety-seven children in the study developed chondrolysis. (Moscowitz Nov. 30, 2004, Trial Tr. at 80.) Based upon all "the published studies . . . the incidence of chondrolysis was reduced from as much as fifty percent of the cases in which there was pin penetration, down to as low as two and three percent, and in some, even zero percent." Id. at 91.

Additionally, reducing the number of pins used from three or four with the Knowles pin to one with the cannulated screw reduced the chance that a pin would violate the integrity of the cartilage (and thus reducing the incidence of chondrolysis). See id. at 15. In sum, there was a multi-hundred percent reduction in the percent of incidence of chondrolysis following pin penetration with the use of the cannulated screw, compared with use of the

Knowles pin.[1]  (Moscowitz Nov. 29, 2004, Trial Tr. at 73.)  Campbell's also related a study of 114 hips, finding only 4.6 percent of hips with a single pin had complications, while 36 percent of those with multiple pins had complications.  (Moscowitz Nov. 30, 2004, Trial Tr. at 88.)

Another advantage of the cannulated screw is increased grasping strength, meaning that the screw will not move in either direction.  (Moscowitz Nov. 29, 2004, Trial Tr. at 77.)  Moscowitz saw no evidence of chondrolysis in Covon's left or right hip prior to the respective surgeries.  Id. at 83-84.

Prior to Covon's surgery on August 18, 1999, Moscowitz diagnosed a mild, stable slip as to the right hip.  (See Moscowitz Nov. 30, 2004, Trial Tr. at 30-32.)  A study set forth in Campbell's found that mild slips treated with a single cannulated screw obtained satisfactory results, with no chondrolysis occurring.  Id. at 32.  A review of studies of pinning hips that were mild revealed virtually no "current evidence of chondrolysis occurring with the use of the cannulated screw in relationship to a fairly high incidence of chondrolysis occurring with the Knowles pinning."  (Polisner Trial Tr. at 46.)  Additionally, the studies showed that if a penetration was discovered during surgery and that pin was immediately backed out, there was no incidence of chondrolysis.  Id.  The inference drawn from these studies results was that a pin had to "be penetrating for more than a few minutes in order for the chondrolysis to occur."  Id. at 47.

---

[1] It is noted that Moscowitz related several difficulties inherent in the use of the cannulated screw as opposed to the Knowles pins.  (Moscowitz Nov. 30, 2004, Trial Tr. at 71-78.)  For example, the cannulated screw requires pre-drilling, resulting in more exposure of the child to radiation from the x-ray. He also noted complications that occurred in patients in which cannulated screws were used, such as fractured femurs, fractured pins, and a complete failure of the procedure.  Id. at 75.  These facts go to whether Moscowitz was negligent, rather than to the issue of whether lack of informed consent was a proximate cause of injuries.

After surgery to fixate a SCFE, a child should not have symptoms beyond about two weeks. Id. at 51. The normal post-operative course would be one-third pain free after three or four days, two-thirds pain free after an additional three or four days, and completely pain free after two and a half weeks at the longest. Id. at 56. Progressive weight bearing is then permitted allowing for a gradual weaning from the use of crutches. Id. Normally a child is completely free of "crutches and well healed and comfortable by four to six weeks." Id. Any pain beyond about two weeks is "absolutely not normal" and must be investigated to determine if there is a complication, the most common of which is a pin penetration. Id. at 51-52.

Moscowitz indicated to Covon and Mrs. Martin that by three weeks post-operatively he should be experiencing only mild discomfort. (Moscowitz Nov. 30, 2004, Trial Tr. at 6-7.) After his surgery on August 18, 1999, Covon complained of continuing pain and reduced range of motion on September 13, 1999. On September 30, 1999, about six weeks post-operatively, Covon was still experiencing considerable pain with any motion at all. Id. at 59. A pin penetrating the joint cartilage can cause pain. Id.

At that juncture, Covon consulted with a different orthopaedic specialist, who determined that two of the Knowles pins in Covon's right hip were penetrating the cartilage. Surgery was performed in early November 1999 to remove the two penetrating pins. Covon now has chondrolysis and degenerative arthritis in his right hip, accompanied by pain and limited range of motion.

Viewing the evidence most favorable to Moscowitz, as must be done when evaluating a Rule 50 motion for judgment as a matter of law, and refraining from weighing the evidence and witness credibility, it is evident that there was "no legally sufficient

evidentiary basis for a reasonable jury to find" that no unnecessary injury resulted to Covon from the August 19, 1999, surgery. See Fed. R. Civ. P. 50(a); Nimely, 414 F.3d at __, 2005 WL 1620481, at *6. If the jury determined that Mrs. Martin would not have consented to any operation, all the evidence establishes that the surgery itself was unnecessary injury suffered by Covon, and there was no evidence to the contrary.

Furthermore, if the jury determined that she would have consented to surgery with the cannulated screw, the overwhelming amount of evidence that Covon suffered at least some unnecessary injury would prevent a reasonable and fair minded person from arriving at a verdict against Covon. See LeBlanc-Sternberg, 67 F.3d at 429. There was overwhelming evidence that a normal recovery would be had in just a few weeks, after which the patient would be pain free. Use of the Knowles pins carried the risk of pin penetration (and pain), whereas use of a cannulated screw virtually foreclosed continued pin penetration. Additionally, the evidence was overwhelming that continued pin penetration caused chondrolysis, a permanent painful condition, and that chondrolysis would not occur in a mild slip, such as Covon's, with either fixation by cannulated screw or no surgical treatment. Accordingly, plaintiff is entitled to judgment as a matter of law.

Even if the evidence could be considered legally sufficient to support the verdict under Rule 50, plaintiff would clearly be entitled to relief under Rule 59. Consideration of all the evidence as set forth above establishes that a finding that Covon suffered no unnecessary injury as a result of the August 18, 1999, surgery is seriously erroneous, as well as a miscarriage of justice. See Sorlucco, 971 F.2d at 875. Use of Knowles pins left open the possibility that pins would penetrate and not be discovered until some later time. The possibility of continued penetrating pins is non-existent with the cannulated screw technique

for a number of reasons, not the least of which is that dye is injected during surgery so that proper placement can be confirmed prior to the end of surgery. Checking for the proper placement in this manner permits the correction of an improper placement (i.e., penetration) in just a few minutes time. Covon had additional time for recovery and unusual pain during the recovery period due to the penetrating pins. An additional surgery was required to remove the penetrating pins, causing additional injury. Finally, a jury could easily conclude that Covon's chondrolysis and degenerative arthritis, a permanent painful and debilitating condition that will require additional surgeries in the future, was caused by performance of the surgery on August 18, 1999, using Knowles pins. Accordingly, plaintiff is also entitled to relief pursuant to Rule 59.

## V. **CONCLUSION**

In light of the jury's findings that informed consent was lacking with regard to the surgery on Covon's right hip and that consent would not have been given had Mrs. Martin been properly informed, its finding that the operation of August 18, 1999, was not a substantial factor in causing unnecessary injury to Covon cannot stand. Considering the evidence in the light most favorable to Moscowitz, making all inferences in his favor, and not weighing conflicting evidence and witness credibility, there is not a legally sufficient evidentiary basis for a reasonable jury to find in Moscowitz's favor. There was such an overwhelming amount of evidence in favor of Covon that reasonable and fair minded jurors could not have found that no unnecessary injury resulted from performing the surgery with Knowles pins. Plaintiff is entitled to judgment as a matter of law. Further, relief pursuant to Rule 59 is warranted because, giving due consideration to all of the evidence, the jury reached a seriously erroneous result and the verdict is a miscarriage of justice.

Accordingly, it is

ORDERED that

1. Plaintiff's motions for judgment as a matter of law and for a new trial are GRANTED;

2. The judgment is VACATED; and

3. A new trial on the issue of the amount of damages to be awarded to Covon Martin as a result of the lack of informed consent relating to his right hip will be held.

IT IS SO ORDERED.

United States District Judge

Dated: August 16, 2005
       Utica, New York.